### THE JUSTICES *v.* MURRAY.

1. The provision in the seventh amendment of the Constitution of the United States, which declares that no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law, applies to the facts tried by a jury in a cause in a State court.
2 So much of the 5th section of the act of Congress of March 3d, 1863, entitled "An act relating to habeas corpus and regulating proceedings in certain cases," as provides for the removal of a judgment in a State court, and in which the cause was tried by a jury, to the Circuit Court of the United States for a retrial on the facts and law, is not in pursuance of the Constitution, and is void.

ERROR to the Circuit Court for the Southern District of New York; the case being thus:

Patrie brought a suit for an assault and battery and false

---

imprisonment against Murray and Buckley in the Supreme Court of the Third District of New York; to which the defendants pleaded the general issue, and pleaded further as a special defence that the said Murray was marshal of the Southern District of New York, and the said Buckley his deputy; and that, as such marshal, he, Murray, was, by order of the President, on or about the 28th August, 1862, directed to take. the plaintiff into custody; that the said Buckley, as such deputy, was directed by him, the marshal, to execute the said order; and that, acting as such deputy, and in pursuance of his directions, he, Buckley, did, in a lawful manner, and without force or violence, take the said Patrie into custody; that during all the time he was in custody he was kept and detained in pursuance of said order of the President, and not otherwise.

Issue being thus joined, the cause was tried at the Circuit Court in Greene County, within the third judicial district, before a jury. The defendants appeared by counsel. No evidence was given on the trial, on the part of the defendants, in support of the special defence set up as being under the order of the President. A verdict was rendered for the plaintiff and judgment was regularly entered upon the verdict.on the 8th June, 1864.

In December following a writ of error was issued to the Supreme Court of the Third District, to remove the cause to the Circuit Court of the United States for the Southern District of New York. The writ was issued under the 5th section of an act of Congress, passed March 3d, 1863, entitled "An act relating to *Habeas Corpus,* and regulating proceedings in certain cases." The 5th section of this act provides as follows:

" If 'any suit or prosecution, civil or criminal, has been or shall be commenced in any State court, against any officer, civil or military,' . . . or 'for any arrest or imprisonment made' . . . 'at any time during the present rebellion, by virtue or under color of any authority by or under the President of the United States,' . . . 'it shall' . . . 'be competent for either party, within six months after the rendition of a judgment in any such cause,

by writ of error or other process, to remove the same to the Circuit Court of the United States for that district in which such judgment shall have been rendered; and the said Circuit Court shall thereupon proceed to try and determine the facts and law in such action in the same manner as if the same had been there originally commenced, the judgment in such case notwithstanding.'"

The State court refused to make a return to the writ of error. Thereupon an alternative mandamus was issued by the Circuit Court of the United States, to which a return was made setting forth the suit, trial, and judgment already referred to. To this there was a demurrer and joinder; and, after due consideration, the demurrer was sustained, and a judgment for a peremptory mandamus rendered. From this judgment a writ of error was taken to this court.*

The case was argued on two occasions, and each time with ability and care. On the first by *Mr. A. J. Parker, for the plaintiffs in error, and by Mr. Evarts, then Attorney-General, contra;* and at this term, by *Mr. Parker again, on one side as before, and by Mr. Hoar, now Attorney-General, with Mr. Field, Assistant Attorney-General, on the other.* On the second occasion the argument was confined to two questions submitted by the court:

1. Whether or not the act of Congress of March 3d, 1863, providing for the removal of a cause, after judgment by a State court, to the Circuit Court of the United States, for a new trial, is an act in pursuance of the Constitution of the United States?

2. Whether or not the provision in the seventh amendment of the Constitution of the United States, which declares that no fact tried by a jury shall be otherwise re-examined

---

* The alternative and peremptory mandamus against the Supreme Court of New York was allowed by consent of the counsel for the defendants, with a view to present the question raised and decided in the case. The Circuit Court had refused to issue it against the court, and issued it only against the clerk. This is stated to prevent the case from being cited as an authority for the power, and without intending to express any opinion on this subject. S. N.

in any court of the United States than according to the rules of the common law, applies to the facts tried by a jury in a cause in a State court?

Mr. Justice NELSON delivered the opinion of the court.

This case has received the most deliberate consideration of the court. As we have arrived at the conclusion that the seventh amendment, upon its true construction, applies to a cause tried by a jury in a State court, this opinion will be confined to considerations involved in the second question submitted to us for argument at the bar. The decision of that in the affirmative disposes of the case.

The seventh amendment is as follows: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved; and no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the common law."

It must be admitted that, according to the construction uniformly given to the first clause of this amendment, the suits there mentioned are confined to those in the Federal courts; and the argument is, perhaps, more than plausible, which is that the words, " and no fact tried by a jury," mentioned in the second, relate to the trial by jury as provided for in the previous clause. We have felt the full force of this argument, and if the two clauses were necessarily to be construed together, and to be regarded as inseparable, we think the argument would be conclusive. But this is not the view that has been taken of it by this court. In *Parsons* v. *Bedford et al.*,* Mr. Justice Story, in delivering the opinion of the court, referring to this part of the amendment, observed, "that it should be read as a substantial and independent clause;" and that it was "a prohibition to the courts of the United States to re-examine any facts tried by a jury in any other manner." The history of the amendment confirms this view.† He further observed that "the only modes

---

* 3 Peters, 447, 448.

† Debates in Congress, by Gales & Seaton, vol. 1, pp. 452, 458, 784.

---

---

known to the common law to re-examine such facts was the granting of a new trial by the court where the issue was tried, or the award of a venire facias de novo, by the appellate court, for some error of law that had intervened in the proceedings."

Another argument mainly relied upon against this construction is that the ten amendments proposed by Congress, and adopted by the States, are limitations upon the powers of the Federal government, and not upon the States; and we are referred to the cases of *Barron* v. *The Mayor and City Council of Baltimore;** Lessee of Livingston* v. *Moore and others;†  Twitchell* v. *The Commonwealth,‡* as authorities for the position. This is admitted, and it follows that the seventh amendment could not be invoked in a State court to prohibit it from re-examining, on a writ of error, facts that had been tried by a jury in the court below. But this would seem to be the only consequence deducible from these cases or from the principles they assert. They have no pertinent, much less authoritative, application to the question in hand. That question is not whether the limitation in the amendment has any effect as to the powers of an appellate State court, but what is its effect upon the powers of the Federal appellate court? Is the limitation confined to cases of writs of error to the inferior Federal courts, or does it not also apply to writs of error to State courts in cases involving Federal questions? The latter is the precise question for our determination. Now, it will be admitted that the amendment, in terms, makes no such discrimination. They are: "and no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law." It is admitted that the clause applies to the appellate powers of the Supreme Court of the United States in all common law cases coming up from an inferior Federal court, and also to the Circuit Court in like cases, in the exercise of its appellate powers. And why not, as it respects the exercise of these powers in cases of Federal cog-

---

&#42; 7 Peters, 243.        † Ib. 551.        ‡ 7 Wallace, 321.

nizance coming up from a State court? The terms of the amendment are general, and contain no qualification in respect to the restriction upon the appellate jurisdiction of the courts, except as to the class of cases, namely, suits at common law, where the trial has been by jury. The natural inference is that no other was intended. Its language, upon any reasonable, if not necessary, interpretation, we think, applies to this entire class, no matter from what court the case comes, of which cognizance can be taken by the appellate court.

It seems to us also that cases of Federal cognizance, coming up from State courts, are not only within the words, but are also within the reason and policy of the amendment. They are cases involving questions arising under the Constitution, the laws of the United States, and treaties, or under some other Federal authority; and, therefore, are as completely within the exercise of the judicial power of the United States, as much so as if the cases had been originally brought in some inferior Federal court. No other cases tried in the State courts can be brought under the appellate jurisdiction of this court or any inferior Federal court on which appellate jurisdiction may have been conferred. The case must be one involving some Federal question, and it is difficult to perceive any sensible reason for the distinction that is attempted to be made between the re-examination by the appellate court of a case coming up from an inferior Federal, and one of the class above mentioned coming up from a State court. In both instances the cases are to be disposed of by the same system of laws and by the same judicial tribunal.

Mr. Hamilton, in the 82d number of the Federalist, speaking of the relation that would subsist between the National and State courts in the instances of concurrent jurisdiction, observes that the Constitution, in direct terms, gives an appellate jurisdiction to the Supreme Court in all the enumerated cases of Federal cognizance in which it is not to have an original one, without a single expression to confine its operations to the inferior Federal courts. The objects of

appeal, not the tribunals from which it is to be made, are alone contemplated. From this circumstance, he observes, and from the reason of the thing, it ought to be construed to extend to the State tribunals. "The courts of the latter will, of course, be National auxiliaries to the execution of the laws of the Union, and an appeal from them will as naturally lie to that tribunal which is destined to unite and assimilate the principles of National justice and the rules of National decisions."

This idea of calling to the aid of the Federal judiciary the State tribunals, by leaving to them concurrent jurisdiction in which Federal questions might be involved, with the right of appeal to the Supreme Court, will be found to be extensively acted upon in the distribution of the judicial powers of the United States in the act of 1789, known as the Judiciary Act. Besides the general concurrent jurisdiction in the Judiciary Act, a striking instance of this is found in the 33d section of the act, which provides "that for any crime or offence against the United States the offender may, by any justice or judge of the United States, or by any justice of the peace or other magistrate of any of the United States where he may be found, agreeably to the usual mode of process against offenders in such State, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by this act has cognizance of the offence." And a series of acts were also passed in the earlier sessions of Congress, conferring upon the State and county courts cognizance to hear and determine upon offences, penalties, and forfeitures, and for the collection of taxes and duties arising and payable under the revenue laws, or under a direct tax or internal duties, and which were continued down till the State courts refused to entertain jurisdiction of the same.* The State courts of New York continued to exercise jurisdiction under these acts till as late as 1819.†

The reasons, therefore, for the application of this clause

---

* 1 Brightly's Digest, 281, and note *g*, p. 282.

† United States *v.* Lathrop, 17 Johnson, 4.

of the seventh amendment to cases coming up for review from the State courts were as strong as in cases from the inferior Federal courts, and the history of the amendment will show that it was the apprehension and alarm in respect to the appellate jurisdiction of this court over cases tried by a jury in the State courts that led mainly to its adoption.

The appellate jurisdiction of this court, after defining its original jurisdiction, is as follows:

"In all other cases before mentioned the Supreme Court shall have appellate jurisdiction both as to law and fact, with such exceptions and under such regulations as Congress shall make."

Mr. Hamilton, in the 81st number of the Federalist, after quoting the provision observes: "The propriety of this appellate jurisdiction has been scarcely called in question in regard to matters of law, but the clamors have been loud against it as applied to matters of fact. Some well-intentioned men in this State, deriving their notions from the language and forms which obtain in our courts, have been induced to consider it as an implied supersedure of the trial by jury in favor of the civil law mode of trial." And he then enters into an argument to show that there is no real ground for alarm or apprehension on the subject, and suggests some regulations by Congress by which the objections would be removed. He observes, also, that it would have been impracticable for the Convention to have made an express exception of cases which had been originally tried by a jury, because in the courts of some of the States all causes were tried in this mode, and such exception would preclude the revision of matters of fact, as well where it might be proper as where it might be improper. He then suggests that Congress has full power to provide that in appeals to the Supreme Court there should be no re-examination of the facts where the causes had been tried by a jury according to the common law mode of proceeding. Now, it is quite clear that the restrictions upon this appellate power by Congress, pointed out by Mr. Hamilton for the purpose of quieting the public mind, had a direct reference to the revision of the

judgments of the State courts as well as the inferior Federal, and what is significant on the subject is, that the amendment submitted in the first session of Congress by Mr. Madison adopts the restriction suggested by Hamilton, and almost in the same words.   We will simply add, there is nothing in the history of the amendment indicating that it was intended to be confined to cases coming up for revision from the inferior Federal courts, but much is there found to the contrary.*

Our conclusion is, that so much of the 5th section of the act of Congress, March 3d, 1863, entitled "An act relating to habeas corpus, and regulating proceedings in certain cases," as provides for the removal of a judgment in a State court, and in which the cause was tried by a jury, to the Circuit Court of the United States for a retrial on the facts and law, is not in pursuance of the Constitution, and is void.

The judgment of the court below must, therefore, be REVERSED, the cause remanded with direction to dismiss the writ of error and all proceedings under it.

---

* Wetherbee v. Johnson, 14 Massachusetts, 412; Patrie v. Murray, 43 Barbour, 331.