Sanford H. COHEN and Faye R. COHEN, h/w, Plaintiffs,

v.

RESOLUTION TRUST CORPORATION, in its capacity as Receiver for Bell Savings Bank, PaSA, et al., Defendants.

Civ. A. No. 91–3944.

United States District Court, E.D. Pennsylvania.

Jan. 27, 1992.

---

James W. McGuire, John C. Gregory, Jr., Kelley, Jasons, McGuire & Spinelli, Philadelphia, Pa., for plaintiffs.

Michael R. Lastowski, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This matter is before the Court on a motion of defendant Resolution Trust Corporation ("RTC") in its capacity as receiver for Bell Savings Bank, PaSA ("Bell Savings"), to dismiss or, in the alternative, to stay proceedings in a judicial action brought by plaintiffs Sanford and Faye Cohen until the exhaustion by plaintiffs of the administrative procedures mandated by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (1989), codified primarily at 12 U.S.C. § 1821. For the reasons set out below, this Court will

deny defendant RTC's motion to dismiss this action, but will grant a stay in the judicial proceedings until the RTC has made a determination on the proof of claim filed by the Cohens under the administrative procedures; however, in no event shall this stay extend past February 11, 1992, which date being, pursuant to FIRREA, 180 days from August 15, 1991, the date on which the Cohens filed their proof of claim with the RTC as receiver of Bell Savings.

The facts of which there are no genuine issues in dispute are as follows. The Cohens were customers of Bell Savings Bank, of Philadelphia, Pennsylvania. On or about February 20, 1990, they filed a complaint in equity and at law against Bell Savings in the Court of Common Pleas for Philadelphia County, Pennsylvania, alleging that Bell had breached certain tort and contract obligations in connection with Bell's handling of a line of credit maintained for the Cohens' use, and that Bell had unlawfully frozen or seized certain certificates of deposit and accounts owned by the Cohens. Settlement negotiations were conducted in lieu of pleadings and discovery, during which defendant Bell Savings' counsel changed three times. Negotiations broke down, and on March 4, 1991, Bell Savings persuaded the Court of Common Pleas to enter a judgment non pros. The Cohens promptly petitioned to open the judgment.

In March, 1991, Bell Savings was taken over by the RTC, and on or about April 25, 1991, the RTC was substituted for Bell Savings as defendant in this action. The RTC then removed the action from the Court of Common Pleas to the United States District Court for the District of Columbia. Meanwhile the Court of Common Pleas granted the Cohens' petition to open, but vacated its order on the RTC's application, since the removal motion had been filed prior to the order granting the petition. On plaintiffs' motion, the action was transferred to the United States District Court for the Eastern District of Pennsylvania.

On August 15, 1991, the Cohens filed with the RTC a proof of claim under the administrative procedures that have been established for all claimants to the assets of a failed depository institution. In addition to claiming that Bell Savings is indebted to the Cohens in the amount of $240,930.86 on two certificates of deposit plus interest due, the Cohens also asserted factors that gave rise to their judicial action against Bell Savings. In their proof of claim, the Cohens asserted that they had had an ongoing relationship with Bell Savings in which the Cohens were provided with a commercial line of credit from 1984 until January, 1990, when the relationship broke down and resulted in their accounts, certificates of deposit and line of credit being frozen. The Cohens then discontinued payment of interest on the line of credit, after which Bell Savings instituted a confession of judgment action even though Bell Savings had been authorized by the Cohens to pay the interest from the certificates of deposit. As a result of the actions of Bell Savings, the Cohens asserted that they had incurred, to the date of their proof of claim, over $20,000.00 in legal fees, that their credit rating and thus business dealings have suffered, and that they have had to rely on diminishing savings.

According to an affidavit dated September 26, 1991, and signed by Mary K. McNally, a claims specialist for the RTC, the Cohens' proof of claim is currently under consideration by the RTC.

On October 1, 1991, the RTC filed a motion in this Court to dismiss the judicial action of the Cohens, asserting that, until the Cohens have exhausted the administrative claims procedure mandated by FIRREA, this Court lacks subject matter jurisdiction over their claim. In the alternative, the RTC moves to stay the judicial proceedings pending exhaustion of administrative remedies. The Cohens oppose the motion to dismiss but do not oppose the motion for a stay.

The Third Circuit recently provided what it termed a "thumbnail sketch" of FIRREA in *Praxis Properties v. Colonial Savings Bank,* 947 F.2d 49 (3d Cir.1991). In its sketch, the Third Circuit used "RTC" to refer generically to the corporation ap-

pointed conservator or receiver under FIR-REA.

In 1989 Congress enacted FIRREA, the most sweeping thrift reform law in the nation's history, to restore public confidence in the savings and loan industry and to reorganize the insolvent Federal Savings and Loan Insurance Corporation ("FSLIC").... FIRREA created RTC, a wholly-owned government corporation that essentially took over the role of the FSLIC, to resolve the cases of insolvent or failed thrifts.... To facilitate this statutory mandate, FIRREA gave RTC broad powers to manage, sell, merge, consolidate, or liquidate failed thrifts....

FIRREA also created a comprehensive administrative procedure for adjudicating claims asserted against a failed depository institution.... RTC as receiver of an insolvent thrift initiates this process by giving prompt notice to the institution's creditors. This notice informs the alleged creditors that they have (at least) 90 days from the initial publication of notice to present their claims against the assets of the thrift. Once a creditor's claim has been presented, RTC has 180 days to consider the claim and to notify the claimant whether its claim has been allowed or disallowed....

If RTC denies a creditor's claim or fails to render a decision within the allotted 180–day period, then the claimant has 60 days to: (1) request an administrative review of the claim; or (2) file suit on the claim in the district court for the District of Columbia or in the district court in the district where the failed thrift's principal place of business is located; or (3) *continue a judicial action commenced prior to the appointment of a receiver.* If the claimant elects to commence *or continue a judicial proceeding,* the court determines de novo the claim against the depository institution....

FIRREA expressly limits a claimant's ability to circumvent the above administrative claims procedure, providing for a strict limitation on judicial review.... [and] thus vests RTC with primary jurisdiction, in most circumstances, to determine a claim against a failed financial institution before judicial intervention.

*Id.* at 62–63 (citations and footnotes omitted) (emphasis added).

The RTC asserts that, under FIRREA, this Court is divested of jurisdiction of this action until the completion of its administrative procedure and that the action, therefore, must be dismissed. This Court disagrees. In *Praxis,* the Third Circuit, as quoted above, also stated that, where the RTC *had already been appointed receiver of a depository institution before a claimant filed an action,* then the claimant must comply with FIRREA's statutory procedures as a prerequisite to federal jurisdiction. *Id.* at 63. In a footnote, the Third Circuit then added,

The situation is slightly different, however, when a claimant files its action against a depository institution *before* the institution becomes insolvent and is placed in receivership. In that case, the failure of the thrift and the appointment of RTC as receiver would appear not to divest the federal court of jurisdiction, for *'[i]t is a firmly established rule that subject matter jurisdiction is tested as of the time of the filing of the complaint,'....*

*Id.* at 63 n. 14 (citations omitted) (first emphasis original, second emphasis added).

As stated heretofore, the Cohens commenced this action on or about February 20, 1990. The RTC was not appointed receiver for Bell Savings until on or about April 25, 1991. Thus, pursuant to *Praxis,* this Court concludes that it is not divested of jurisdiction. The motion of the RTC to dismiss this action will, therefore, be denied.

■ In the alternative, the RTC asserts that judicial proceedings should be stayed until the Cohens have exhausted their administrative remedies. The Cohens do not oppose the RTC's motion for a stay. Before granting a stay, however, this Court must make two determinations. The first is whether a stay is appropriate in this action. The second is, if a stay is appropriate, for how long should the stay be granted.

It is necessary for this Court to make these determinations because, as the Third Circuit stated in *Praxis*, the statutory provisions of FIRREA relating to stays "are in tension." *Id.* at 64 n. 14. Further, several lower courts that have discussed the FIRREA provisions have concluded that they are difficult to reconcile. *E.g.*, *Bank of New England N.A. v. Callahan*, 758 F.Supp. 61 (D.N.H.1991); *Rexam Ltd. v. Resolution Trust Corp.*, 754 F.Supp. 245 (D.P.R.1990); *Tuxedo Beach Club Corp. v. City Federal Sav. Bank (Tuxedo II)*, 737 F.Supp. 18 (D.N.J.1990); *Tuxedo Beach Club Corp. v. City Federal Sav. Bank (Tuxedo I)*, 729 F.Supp. 1508 (D.N.J.1990). These courts have determined that section 1821(d)(12) mandates that, on the request of the RTC, a court must grant a stay of 90 days when the RTC is appointed receiver of a depository institution, or 45 days if appointed conservator, when the depository institution is already involved in ongoing judicial proceedings. After the 90 or 45 days have elapsed, these courts have determined that one section of FIRREA, 12 U.S.C. § 1821(d)(5)(F)(ii), clearly appears to allow the plaintiff to continue its action without further impediment; but that another section, 12 U.S.C. § 1821(d)(6), appears to mandate that all claimants must use the administrative procedures established under FIRREA. If one concludes from section 1821(d)(6) that all claimants, even those claimants who are involved in a judicial proceeding that is ongoing at the time the RTC is appointed receiver or conservator, must file a claim under the administrative procedures, then even these claimants must give the RTC 180 days from the date of filing of the claim to make its determination, regardless of the apparent meaning of section 1821(d)(5)(F)(ii).

The sections pertaining to this 180 day period, that is, sections 1821(d)(3)–(8) and (13), further, do not provide for a stay during the 180 days given to the RTC to review a claim. Section 1821(d)(6), for example, states only that, within 60 days after the earlier of either the end of the 180-day period following the filing of a claim or the date of the disallowance of that claim, a claimant may continue an action that was commenced before the appointment of a receiver. Neither this section nor the others pertaining to the 180 day period for determination of a claim specifically state that there is to be a stay during this period. This is in marked contrast to section 1821(d)(12), which does specifically state that during the 90– or 45–day period after appointment of receiver or conservator, a court shall grant "a stay of any judicial action or proceedings" upon request of receiver or conservator.

Still, as the Third Circuit noted in *Praxis*, several courts have inferred from sections 1821(d)(3)–(8) and (13) that the RTC has "a *right* to a 180–day stay of a pending judicial proceeding, requiring the claimant to exhaust the administrative review process before returning to court." *Praxis* at 63–64 n. 14 (emphasis added). Not faced with a situation in *Praxis* in which a 180–day stay was appropriate, however, the Third Circuit stated, "We express no position on whether the 180–day administrative stay of pending proceedings is a proper inference from the statute, ..." *Id.* at 64 n. 14.

Thus, this Court must determine whether a 90–day stay is appropriate in the present case, and if it is not, whether a 180–day stay is "a proper inference from the statute" under the facts of this action.

This Court determines that the 90–day stay under section 1821(d)(12) is not appropriate in the present action. As outlined above, section 1821(d)(12) mandates that, upon request by the RTC after it has been appointed receiver or conservator, a court "shall grant" a stay of any judicial action or proceeding for a period not to exceed 90 days in the case of a receiver and 45 days in the case of a conservator. The legislative history of FIRREA indicates that this provision was enacted to give the RTC enough time to orient itself to litigation which is ongoing at the time the receiver or conservator is appointed. H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 331 (1989), *reprinted in* 1989 U.S.Code Cong. & Admin.News (103 Stat.) 86, 127. On the basis of the legislative history, several lower courts have determined, and it now appears to be accepted, that the 90– or 45–day stay

of section 1821(d)(12) is mandatory, leaving a court no discretion, but that this stay is appropriate only when requested by the receiver or conservator immediately after its appointment, and that the applicable 90– or 45–day limit is retroactive to the date of the RTC's appointment. *E.g., Tuxedo I,* 729 F.Supp. at 1509.

This Court determines that the reasoning of these courts is persuasive. The 90–day stay of section 1821(d)(12), therefore, is not appropriate in the present action. The RTC was appointed receiver on April 25, 1991. The RTC did not request a stay of this action, which was ongoing when the RTC was appointed, until October 1, 1991. The 90–day maximum limit, counting from the date of the RTC's appointment, for a stay under section 1821(d)(12), has thus expired.

■ As also outlined above, another section of FIRREA, section 1821(d)(5)(F)(ii), seems to clearly limit any stays available to the RTC as a receiver to the 90–day stay of section 1821(d)(12) and appears to give a plaintiff the right, following this stay to continue an action without further interruption. Nevertheless, this Court agrees with those courts that have concluded that the RTC should be granted a stay during the 180–day period allowed to it for determination of a claim. *E.g., Praxis* at 64 n. 14 (cases listed). First, this Court concludes that the intent of Congress is clearly expressed in the legislative history of FIRREA. The House Report, after discussing the administrative procedures to be set up for determining claims, states in pertinent part:

> The agency's determination whether to allow a claim must be made within 180 days after the claim is timely filed, unless both parties agree to extend that time period.... Any suit *(or motion to renew a suit filed prior to appointment of the receiver)* must be brought by the claimant within 60 days after the denial of the claim. Resort to either the District Courts or administrative process is available only after the claimant has first presented its claim to the FDIC.

\*  \*  \*  \*  \*  \*

> There shall be no judicial review of the administrative determination not to allow a claim. Rather, the claimant must file suit *or continue a previously filed suit* to establish a disallowed claim.

H.Rep. No. 101–54(I), 101st Cong. 1st Sess., *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 214–15 (emphasis added).

Second, under the facts of this case, this Court concludes that a stay of 180 days is a "proper inference" from the statute. As set out above, the proof of claim submitted by the Cohens under the administrative procedures of FIRREA closely tracks the claims in their judicial action. To proceed with both an administrative remedy and a judicial action would be duplicative, and would be contrary to the intent of Congress that the claims determination procedure under FIRREA "enable[ ] the [RTC] to dispose of the bulk of claims against failed financial institutions expeditiously and fairly.... [The claims procedure] should allow the [RTC] to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts." *Id.* at 215.

■ Further, this Court concludes that it was the intent of Congress that the 180–day stay during which the RTC is to determine a claim is to begin to run on the date of the filing of a proof of claim. As the House Report also states, "If there is no initial decision within 180 days, a claimant may file an action on the claim in the appropriate District Court." H.Rep. No. 101–54(V), 101st Cong. 1st Sess., *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 405. *See also* section 1821(d)(6)(A) (before the end of 60 days following the 180–day period for determination of claims, or the date of the notice of a claim disallowance, the claimant may request administrative review of the claim, file suit on the claim, *"or continue an action commenced before the appointment of the receiver....")* (emphasis added).

This Court determines, therefore, that a stay of 180 days is appropriate in the present action, and that the 180 days began to run on the date on which the Cohens

filed their proof of claim with the RTC, that is, on August 15, 1991. Pursuant to Section 1821(d)(6), therefore, this Court will grant the RTC's motion for a stay of the judicial proceedings until the earlier of the date of the determination by the RTC of the Cohens' proof of claim, or February 11, 1992, such date being 180 days following August 15, 1991, the date of the filing of the Cohens' proof of claim.

## ORDER

AND NOW, this 27th day of January, 1992, for the reasons stated in this Court's Memorandum dated January 27, 1992; defendant Resolution Trust Corporation having filed a Motion to dismiss, or in the alternative, to stay proceedings in the judicial action brought by plaintiffs Sanford and Faye Cohen until the exhaustion by plaintiffs of the administrative procedures established under the Financial Institutions Reform, Recovery and Enforcement Act of 1989, codified primarily at 12 U.S.C. § 1821;

IT IS ORDERED: defendant Resolution Trust Corporation's motion to dismiss plaintiffs Sanford and Faye Cohen's judicial action is DENIED;

IT IS FURTHER ORDERED: defendant Resolution Trust Corporation's motion to stay plaintiffs Sanford and Faye Cohen's judicial action is GRANTED until the Resolution Trust Corporation has made a determination on the proof of claim filed by the Cohens under its administrative procedures; however, in no event shall this stay extend past February 11, 1992, which date being, pursuant to FIRREA, 180 days from August 15, 1991, the date on which the Cohens filed their proof of claim with the Resolution Trust Corporation as receiver of Bell Savings Bank, PaSA.